UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PAVLO S. KURYLAS,

Petitioner,

v.

BRUCE SCOTT, *et al.*,

Respondents.

Case No. C26-3796-MLP

ORDER

Petitioner Pavlo Kurylas is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this 28 U.S.C. § 2241 habeas petition, asserting his September 24, 2026 redetention, without first receiving notice and an opportunity to be heard, violated his due process rights under the Fifth Amendment. (*See* dkt. # 1.) He also asserts that, because his removal to Ukraine is not reasonably likely to occur, his current detention has become effectively indefinite under *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). (*Id.* at 1-2.) He seeks release from custody, and injunctive relief related to his future redetention and potential third-country removal. (*Id.* at 33.) Respondents filed a return to the petition (dkt. # 5), together with supporting declarations from their counsel Barbara Andrade (dkt. # 6 ("Andrade Decl."))

and U.S. Department of Homeland Security ("DHS") Deportation Officer Christopher Hubbard (dkt. # 7 ("Hubbard Decl.")). Petitioner filed a traverse in reply. (Dkt. # 8.)

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (dkt. # 1) for the reasons set forth below.[1]

## I. BACKGROUND

Petitioner is a native and citizen of Ukraine. (Hubbard Decl., ¶ 3.) On August 16, 2004, U.S. Citizenship and Immigration Services ("USCIS") received a Form I-130 Petition for [Noncitizen] Relative, naming Petitioner as the beneficiary, which was approved on November 2, 2004. (*Id.* ¶¶ 4-5.) On December 26, 2006, Petitioner lawfully entered the United States as a Lawful Permanent Resident. (*Id.* ¶ 6.)

DHS administrative records indicate Petitioner has significant criminal arrest and conviction history between July 2007 and 2018. (*See* Andrade Decl., ¶ 2, Ex. B at 5-10.) Seemingly relevant here, on February 6, 2018, and July 13, 2018, Petitioner was convicted of numerous Washington State crimes, including Criminal Profiteering, Theft of a Motor Vehicle, Unlawful Possession of a Firearm, Theft of a Firearm, Unlawful Possession of a Stolen Vehicle, Unlawful Possession of a Controlled Substance, Possession with Intent to Manufacture to Deliver Methamphetamine, Residential Burglary, and Forgery. (Hubbard Decl., ¶¶ 7-8.)

After serving his sentence at the Coyote Ridge Corrections Center, Petitioner was transferred to ICE custody sometime around April 18, 2022. (Dkt. # 1 at 5; dkt. # 1-7 at 7.) On April 22, 2022, ICE served Petitioner with a Notice to Appear ("NTA"), charging him with removability under the Immigration and Nationality Act ("INA") and placing him into removal proceedings. (Dkt. # 1-7 at 2-3.) On May 13, 2022, an immigration judge ordered Petitioner

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

removed to Ukraine (Dkt. # 1-13 (removal order).) Petitioner waived his right to appeal the removal order. (*Id.* at 4.)

Petitioner was not removed to Ukraine in 2022. He asserts he was informed by ICE officials at the time that DHS chose not to remove him because of the ongoing war in Ukraine. (Dkt. # 1 at 6.) Instead, on August 10, 2022, Petitioner was released from ICE custody into the United States on an Order of Supervision ("OSUP"). (*Id.*; *see* dkt. # 1-14 at 1-4.) The terms of Petitioner's OSUP required, among other conditions, regular ICE check-ins, with which he asserts absolute compliance. (Dkt. # 1 at 6.)

On September 24, 2026, ICE arrested Petitioner, and revoked his OSUP, after he checked in for his regular six-month check-in appointment. (Hubbard Decl., ¶ 17; dkt. # 1 at 6.) Petitioner asserts he was not provided any reason for his redetention other than the change in the administration. (Dkt. # 1 at 6.) He asserts he was expressly told, "You did not do anything wrong, but due to this administration we are going to detain you. There is nothing you did to cause this arrest." (*Id.*) Petitioner asserts he was provided with a Notice of Revocation of Release, but the notice authorizing the revocation is signed approximately seven hours after he was detained. (*Id.* at 11; *see* dkt. # 6-5 at 2.) The notice indicates that ICE revoked Petitioner's OSUP "pursuant to 8 C.F.R. § 241.4(l)" because "[i]t is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal." (Dkt. # 6-5 at 2.) The notice also indicates "ICE is seeking a travel document to effect your expeditious removal to Ukraine." (*Id.*) Petitioner refused to sign receipt of the notice and also refused to sign the "Informal Interview Upon Revocation" form. (*Id.* at 3-4.) Officer Hubbard asserts the "revocation documents were not properly completed" because "the revocation notice and proof

of informal interview did not include a properly completed certificate of attempted service or a signature of the interviewing deportation officer." (Hubbard Decl., ¶ 17.)

Petitioner asserts that at the time of filing his petition, "there is no evidence of a valid travel document to facilitate Petitioner's . . . removal to Ukraine." (Dkt. # 1 at 6.)

Petitioner was transferred to the NWIPC, where he remains detained. (Hubbard Decl., ¶¶ 18-19.)

## II. LEGAL STANDARD

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner raises five claims for relief. The first and third assert Petitioner's September 24, 2026 arrest and redetention violated his procedural due process rights under *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), as well as federal regulations and the Administrative Procedure Act ("APA"). (Dkt. # 1 at 8-13, 19-20, 27-28, 29-30.) The second claim challenges his ongoing detention as unlawfully indefinite under *Zadvydas*. (*Id.* at 13-19, 28-29.) Petitioner's fourth and fifth claims assert violations of the Fifth and Eighth Amendments, 8 U.S.C. § 1231, the Convention Against Torture ("CAT"), implementing federal regulations, and the APA, but they are more properly characterized as requests for injunctive relief because they seek to prohibit his future redetention and possible third-country removal. (*Id.* at 30-33.)

Respondents do not substantively respond to Petitioner's procedural due process claim under *Mathews*, or Petitioner's "indefinite detention" claim under *Zadvydas*. (*See generally* dkt. # 5.) At most, Respondents contend ICE complied with federal regulations when officers revoked Petitioner's OSUP because the regulations only require notice "upon revocation" rather than "before" revocation. (*Id.* at 6.) Respondents demonstrate ICE's compliance by emphasizing that, "Upon revocation, ICE provided Petitioner with written notice of the stated reasons for its determination[,]" yet simultaneously concede in a footnote that "Respondents acknowledge that the Notice of Revocation of Petitioner's [OSUP] is incomplete and therefore procedurally defective." (*Id.* n.5.)

**A. *Mathews* and Due Process**

The *Mathews* factors weigh: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens; and courts in this District commonly apply the framework to procedural due process claims like Petitioner's here. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

As for the first factor, the freedom from physical confinement at the hands of the government is among the most "fundamental" of liberty interests. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Conditionally released noncitizens "have a liberty interest in their continued liberty," the revocation of which is entitled to due process. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); *see Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is

always constrained by the requirements of due process[.]"). The fact that Petitioner was permitted to live in the United States for years, while complying with the terms of his OSUP, only strengthened that interest. The first factor weighs in favor of Petitioner.

As for the second factor, the Court finds there was a high risk of erroneous deprivation and value in additional procedural safeguards. Petitioner asserts there was a high risk of error because neither he nor the government "has had an opportunity to determine whether there is any valid basis for his detention." (Dkt. # 1 at 10 (citing *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025)).)

Respondents argue that "[a]gency regulations expressly contemplate a change in custody status where ICE determines that there is a 'significant likelihood' a noncitizen can be removed from the United States within the 'reasonably foreseeable future,' nothing else is required for revocation under this circumstance." (Dkt. # 5 at 5-6 (citing 8 C.F.R. §§ 241.13(i)(1), (2)).) However, there is no evidence in the current record that ICE determined there was "a significant likelihood that [Petitioner] may be removed in the reasonably foreseeable future" when they arrested and redetained him on September 24, 2026. 8 C.F.R. § 241.13(i)(2). The Notice of Revocation of Release only indicates that "ICE is seeking a travel document to effect your expeditious removal to Ukraine." (Dkt. # 6-5 at 2.) That is vastly different from a scenario where the government has, for example, a valid travel document in hand. *See, e.g.*, *Saechao v. Scott*, 2026 WL 626765, at *5 (W.D. Wash. Mar. 5, 2026) (finding risk of error low because "ICE did not detain [p]etitioner until it had secured a travel document"). Setting that procedural deficiency aside, it thus remains entirely unclear why ICE decided to redetain Petitioner, and hold him in detention, while it sought a travel document for his removal; particularly since the government already acknowledged in 2022 that a timely removal to Ukraine was not going to happen. (*See*

dkt. # 1-14 at 5 (Aug. 10, 2022, Release Notification) ("ICE will continue to make efforts to obtain your travel document that will allow the United States government to carry out your removal pursuant to your order of . . . removal.").) And finally, the fact that it is undisputed that Petitioner maintained compliance with his OSUP further demonstrates a high risk of error and value in additional safeguards. Pre-deprivation process would have provided an opportunity for Petitioner to challenge the factual bases for his detention, as well as the necessity of continued detention while the government sought travel documents. This factor favors Petitioner.

As for the final *Mathews* factor—the governmental interest—Respondents do not identify one in their return. (*See generally* dkt. # 5.) While the government certainly has an interest in enforcing Petitioner's removal order, which may require a brief period of detention, there is no evidence enforcement was significantly likely on September 24, 2026, or in the reasonably foreseeable future thereafter. The Court therefore does not find the government's interest justified forgoing pre-deprivation process when ICE redetained him. This factor also favors Petitioner.

In sum, all three *Mathews* factors favor Petitioner. Habeas relief is therefore warranted. This conclusion aligns with a broad consensus among district courts. *See*, *e.g.*, *Rojas v. Almodovar*, 2025 WL 3034183, at *8 (S.D.N.Y. Oct. 30, 2025) (holding that where "detention was invalid at its inception[,]" petitioner is "entitled to release."); *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025).

In finding release warranted under *Mathews*, the Court need not reach Petitioner's remaining claims under *Zadvydas* and substantive due process, as the requested relief would be duplicative. Those claims are denied as moot.

**B. Injunctive Relief**

Petitioner seeks extensive and specific injunctive relief related to his future redetention and potential third-country removal. (Dkt. # 1 at 30-33.) Respondents contend that Petitioner's request to enjoin and limit the circumstances of his redetention are "barred by the jurisdiction-stripping provision in 8 U.S.C. § 1252(g)." (Dkt. # 5 at 8.) As for Petitioner's request to enjoin his third-country removal, Respondents assert that ICE is "not exploring removal options to any country other than Ukraine" and thus his "request constitutes nothing more than a mere possibility" that does not entitle him to permanent injunctive relief. (*Id.* (quoting *Torres v. Hermosillo*, 2026 WL 145715, at *8 (W.D. Wash. Jan. 20, 2026)).)

Petitioner's request for injunctive relief related to his future redetention seeks to: (1) enjoin Respondents from redetaining him without notice and a pre-deprivation hearing before this Court; (2) enjoin Respondents from redetaining him unless he violates the conditions of his order of supervision or Respondents obtain a valid travel document from Ukraine, provide him and his counsel the travel document, and give him two months to leave on his own and he does not leave; and (3) enjoin Respondents from redetaining and removing or seeking to remove him without first reopening removal proceeding so that he may apply for relief from removal. (Dkt. # 1 at 33.)

While the Court has found that Respondents unlawfully redetained Petitioner on September 24, 2026, it does not necessarily follow that the risk of future unlawful redetention remains. Further, Petitioner asserts his request does not effectively "prevent removal, [but] simply ensures Respondents follow their own protocol for removal." (Dkt. # 8 at 6.) However, this argument ignores the scope of his request because it *would* prevent his removal—for at least two months or until reopened removal proceedings allowed him to adjudicate his applications for

relief from removal, depending on the relief granted. His request therefore likely falls outside this Court's jurisdiction because it would "delay execution of a removal order." *See Makuey v. Scott*, 2026 WL 925647, at *4 (W.D. Wash. Apr. 6, 2026) (citing 8 U.S.C. § 1252(g)). Petitioner does not otherwise explain how his request falls within the government's current "protocol" for redetaining those with final orders of removal. His request is therefore denied.

As for Petitioner's request to enjoin his potential third-country removal, the Court does not find the current record demonstrates a "cognizable danger of recurrent" or future harm. *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003). While Petitioner challenges DHS third-country removal practices generally, there is no evidence ICE is pursuing Petitioner's removal to anywhere but Ukraine, his country of citizenship and the country listed on his order of removal. His request is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1) The petition for writ of habeas corpus (dkt. # 1) is GRANTED in part.

(2) Respondents shall release Petitioner from immigration detention within **twenty-four (24) hours** of this Order, subject to appropriate conditions of supervision consistent with applicable statutory and regulatory authority.

(3) Respondents shall file a status report, no later than **two (2) business days** from the date of this Order, confirming that Petitioner has been released.

(4) Petitioner's remaining claims (Grounds Two and Three) are DENIED as moot.

(5) Petitioner's request for permanent injunctive relief is DENIED.

(6) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal

Access to Justice Act, 28 U.S.C. § 2412. The Court strongly encourages the parties to meet and confer before filing any such motion.

Dated this 30th day of October, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge